IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| GNI WATERMAN LLC, | CASE NO. CV F 07-0863 LJO TAG |
| Plaintiff, | **ORDER ON DEFENDANT'S F.R.Civ.P. 12 MOTIONS** |
| vs. | (Doc. 13.) |
| A/M VALVE COMPANY LLC, et al., | |
| Defendants. | |

**INTRODUCTION**

Defendant A/M Valve Company LLC ("AM Valve") seeks F.R.Civ.P. 12(b)(6) dismissal of plaintiff GNI Waterman LLC's ("GNI Waterman's") Lanham Act and related unfair trade claims on grounds that GNI Waterman's complaint fails to allege essential elements for the claims. Alternatively, AM Valve seeks F.R.Civ.P. 12(e) relief that GNI Waterman replead its claims with greater specificity. GNI Waterman responds that it has sufficiently alleged that AM Valve "passes off" GNI Waterman's products to violate the Lanham Act and to support its claims. This Court considered AM Valve's motions to dismiss and for a more definite statement on the record and VACATES the September 14, 2007 hearing, pursuant to Local Rule 78-230(h). For the reasons discussed below, this Court GRANTS in part and DENIES in part the relief requested by AM Valve.

# BACKGROUND

## The Parties

GNI Waterman is a Delaware limited liability company with its principal place of business in Exeter, California. AM Valve is a Nevada limited liability company with its principal place of business in Visalia, California. Defendant Qingdao Everbright Machinery Co., Ltd. (Qingdao") is a Chinese corporation. Defendant Lucent Auto & Casting, Inc. ("Lucent") is a New Jersey corporation. Defendant William Wang ("Mr. Wang") is a New Jersey resident.

## Formation Of GNI Waterman And AM Valve

In 1912, William Waterman formed W.A. Waterman Company and produced irrigation control products. W.A. Waterman Company was incorporated as Waterman Industries, Inc. ("Waterman Industries") in 1951 and passed through several Waterman family generations. In 2001, three family members, David Appling, Ken Appling and Randy Mullins ("Mr. Mullins"), assumed control of Waterman Industries, which failed and was liquidated in bankruptcy. In 2006, Galena National Investment purchased assets from the Waterman Industries' bankruptcy estate and incorporated them as GNI Waterman, the successor-in-interest to W.A. Waterman Company and Waterman Industries. David Appling, Ken Appling and Mr. Mullins relinquished their control of Waterman Industries.

During Waterman Industries' bankruptcy reorganization, Mr. Mullins and Cheryl Appling ("Ms. Appling"), David Appling's wife, formed AM Valve. According to GNI Waterman, AM Valve "was designed to compete directly with Waterman by using the 'Waterman heritage' to attract customers to its purportedly 'compatible' line of irrigation control products and valves."

## GNI Waterman's Claims

On June 15, 2007, GNI Waterman filed its complaint to allege against AM Valve causes of action for violations of the Lanham Act and California Business & Professions Code sections 17200, et seq. ("Unfair Competition Law"), conversion and trespass to chattel. GNI generally alleges that:

1. The "Waterman" name "has long been associated with superior quality and design" in the irrigation valve and water control industry and "is protected by a federally-registered trademark when used in connection with irrigation valves, water control gates, and similar products";

2.  The Waterman product line's shape and design have become "recognized in the industry as symbols uniquely associated with Waterman" and in particular, the GNI Waterman C-10 canal gate, which comprises a semi-circular "hubcap" design;

3.  AM Valve misappropriated GNI Waterman's proprietary "forms," patterns and designs – property which GNI Waterman created, paid for and owns to manufacture GNI Waterman's valves and water control gates;

4.  AM Valve has used GNI Waterman's proprietary molds to produce "exact copies of [GNI] Waterman's products that are indistinguishable from [GNI] Waterman's products in every material respect" and the only difference in GNI Waterman C-10 canal gate and AM Valve's AMC-10 canal gate is color (GNI Waterman (red) and AM Valve (green)); and

5.  David Appling, Ken Appling and/or Mr. Mullins contacted defendants Lucent and Mr. Wang and asked defendant Qingdao to use GNI Waterman's molds to copy GNI Waterman's products, changing only the name on the finished product.[1]

GNI Waterman alleges three Lanham Act and three state law causes of action against AM Valve and which will be addressed separately below.

## DISCUSSION

### F.R.Civ.P. 12(b)(6) Motion To Dismiss Standards

In short, AM Valve contends that GNI Waterman's causes of action against AM Valve lack necessary elements or allegations to warrant their dismissal. A F.R.Civ.P. 12(b)(6) motion to dismiss is a challenge to the sufficiency of the pleadings set forth in the complaint. "When a federal court reviews the sufficiency of a complaint, before the reception of any evidence either by affidavit or admissions, its task is necessarily a limited one. The issue is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims." *Scheurer v. Rhodes*, 416 U.S. 232, 236, 94 S.Ct. 1683 (1974); *Gilligan v. Jamco Development Corp.*, 108 F.3d 246, 249 (9th Cir. 1997). A F.R.Civ.P. 12(b)(6) dismissal is proper where there is either a "lack of a cognizable legal

---

[1] Previously, Qingdao had manufactured GNI Waterman products and possesses its molds.

theory" or "the absence of sufficient facts alleged under a cognizable legal theory." *Balisteri v. Pacifica Police Dept.*, 901 F.2d 696, 699 (9th Cir. 1990); *Graehling v. Village of Lombard, Ill.*, 58 F.3d 295, 297 (7th Cir. 1995).

In resolving a Rule 12(b)(6) motion, the court must: (1) construe the complaint in the light most favorable to the plaintiff; (2) accept all well-pleaded factual allegations as true; and (3) determine whether plaintiff can prove any set of facts to support a claim that would merit relief. *Cahill v. Liberty Mut. Ins. Co.*, 80 F.3d 336, 337-338 (9th Cir. 1996). "However, conclusory allegations of law and unwarranted inferences are not sufficient to defeat a motion to dismiss." *Pareto v. F.D.I.C.*, 139 F.3d 696, 699 (9th Cir. 1998). A court need not permit an attempt to amend a complaint if "it determines that the pleading could not possibly be cured by allegation of other facts." *Cook, Perkiss and Liehe, Inc. v. N. Cal. Collection Serv. Inc.*, 911 F.2d 242, 247 (9th Cir. 1990).

**F.R.Civ.P. 12(e) Motion For More Definite Statement Standards**

AM Valve further pursues an alternative motion for a more definite statement pursuant to F.R.Civ.P. 12(e), which provides in pertinent part:

> If a pleading to which a responsive pleading is permitted is so vague or ambiguous that a party cannot reasonably be required to frame a responsive pleading, the party may move for a more definite statement before interposing a responsive pleading.

A motion for a more definite statement is proper if "defendant cannot frame a responsive pleading." *Famolare, Inc. v. Edison Bros. Stores, Inc.*, 525 F.Supp. 940, 949 (E.D. Cal. 1981); *see Boxall v. Sequoia Union High School District*, 464 F.Supp. 1104, 1114 (N.D. Cal. 1979). A F.R.Civ.P. 12(e) motion is designed to strike unintelligibility rather than lack of detail. *See Woods v. Reno Commodities, Inc.*, 600 F.Supp. 574, 580 (D. Nev. 1984); *Nelson v. Quimby Island Reclamation Dist.*, 491 F.Supp. 1364, 1385 (N.D. Cal. 1980). A F.R.Civ.P. 12(e) motion should be denied if the pleading provides a "short and plain statement" of the claim showing that the pleader is entitled to relief. *Virgen v. Mae*, 2007 WL 1521553, *2 (E.D. Cal. 2007) (citing F.R.Civ.P. 8(a)(2)).

With these standards in mind, this Court turns to AM Valve's challenges to GNI Waterman's causes of action.

**Lanham Act Violation – Palming Off**

GNI Waterman's (first) Lanham Act palming off cause of action alleges that AM Valve

4

misappropriated GNI Waterman's product patterns and designs, created products interchangeable with and indistinguishable from GNI Waterman's products "in every material respect," and has palmed off "those counterfeit products." AM Valve faults the cause of action's absence of allegations that AM Valve sold GNI Waterman's products under AM Valve's name or sold AM Valve's products under GNI Waterman's name.

GNI Waterman alleges that AM Valve has engaged in conducted prohibited by section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a) ("section 1125(a)"), which provides:

> (1) Any person who, on or in connection with any goods or services . . . uses in commerce any word, term, name, symbol, or device, or any combination thereof, or any false designation of origin, false or misleading description of fact, or false or misleading representation of fact, which--
>
> (A) is likely to cause confusion, or to cause mistake, or to deceive as to the affiliation, connection, or association of such person with another person, or as to the origin, sponsorship, or approval of his or her goods, services, or commercial activities by another person, or
>
> (B) in commercial advertising or promotion, misrepresents the nature, characteristics, qualities, or geographic origin of his or her or another person's goods, services, or commercial activities,
>
> shall be liable in a civil action by any person who believes that he or she is or is likely to be damaged by such act.

Section 1125(a) "condemns false designations or representations in connection with any goods or services." *Shaw v. Lindheim*, 919 F.2d 1353, 1364 (9th Cir. 1990).

As AM Valve notes, the Ninth Circuit Court of Appeals distinguishes between "palming/passing off" claims and "reverse palming/passing off" claims. Palming/passing off involves selling a product of one person's creation under another's name or mark of another. *Lamothe v. Atlantic Recording Corp.*, 847 F.2d 1403, 1406 (9th Cir. 1988). Express palming/passing off arises when "a business labels its goods or services with a mark identical to that of another enterprise, or otherwise expressly misrepresents the origin of the goods or services." *Lamothe*, 847 F.2d at 1406. Implied palming/passing off "involves the use of a competitor's advertising material, or a sample or photograph of the competitor's product, to impliedly represent that the product being sold is made by the competitor." *Lamothe*, 847 F.2d at 1406.

5

Like palming/passing off, reverse palming/passing off may be express or implied. Express reverse palming/passing off arises "when a wrongdoer removes the name or trademark on another party's product and sells that product under a name chosen by the wrongdoer." *Lamothe*, 847 F.2d at 1406. "A defendant may also be guilty of reverse palming/passing off by selling or offering for sale another's product that has been modified slightly and then labeled with a different name." *Roho, Inc. v. Marquis*, 902 F.2d 356, 359 (5th Cir. 1990). Implied reverse palming/passing off arises "simply by removing or obliterating the name of the source and then selling the product in an unbranded state." *Lamothe*, 847 F.2d at 1406. The Ninth Circuit has "implicitly limited the 'reverse passing off' doctrine to situations of bodily appropriation." *Shaw*, 919 F.2d at 1364. Leading Ninth Circuit cases have not indicated that section 1125(a) "is applicable where the products at issue are merely substantially similar." *Shaw*, 919 F.2d at 1364.

AM Valve argues that its alleged copying of GNI Waterman's canal gates is not palming/passing off in the absence of allegations that AM Valve sells products under GNI Waterman's name. AM Valve points to photographs in GNI Waterman's complaint and which demonstrate that the AM Valve and GNI Waterman brands appear prominently on their respective products. AM Valve contends that GNI Waterman fails to claim reverse palming/passing off in the absence of allegations that AM Valve sells GNI Waterman's products under AM Valve's name.

AM Valve further contends that "copying a competitor's functional design in manufacturing one's own goods does not provide grounds for the competitor to assert a 'passing/palming off' claim." "In general, unless an intellectual property right such as a patent or copyright protects an item, it will be subject to copying." *TrafFix Devices, Inc. v. Mktg. Displays, Inc.*, 532 U.S. 23, 39, 121 S.Ct. 1255 (2001). Copying is not always discouraged or disfavored by the laws which preserve our competitive economy. *Bonito Boats, Inc. v. Thunder Craft Boats, Inc.*, 489 U.S. 141, 160, 109 S.Ct. 971, 103 L.Ed.2d 118 (1989). Allowing competitors to copy will have salutary effects in many instances. *TrafFix Devices*, 532 U.S. at 39, 121 S.Ct. 1255. Reading § 1125(a) "as creating a cause of action for, in effect, plagiarism – the use of otherwise unprotected works and inventions without attribution – would be hard to reconcile with our previous decisions." *Dastar Corp. v. Twentieth Century Fox Film Corp.*, 539 U.S. 23, 33, 123 S.Ct. 2041 (2003).

1    GNI Waterman responds that the "core" of its complaint is AM Valve's "methods" to make
2 copies, not that AM Valve has copied GNI Waterman's products. GNI Waterman argues that although
3 AM Valve may "independently" develop products that compete with GNI Waterman, AM Valve is
4 prohibited to misappropriate "a competitor's property to make copies that are 'passed off' as something
5 else." GNI Waterman contends that AM Valve misappropriated GNI Waterman's patterns, used those
6 proprietary patterns to manufacture identical products, and stamped AM Valve's logo to attempt to pass
7 them off as AM Valve's own products. GNI Waterman claims that "the counterfeit products are not only
8 substantially similar, but *identical* in every material respect." (Italics in original.) According to GNI
9 Waterman, AM Valve has committed reverse palming/passing off by using GNI Waterman's patterns
10 to create copies that A/M Valve sells as its own.

11    The gist of GNI Waterman's (first) palming off cause of action is that AM Valve misappropriated
12 GNI Waterman's product patterns and designs to create products interchangeable with GNI Waterman's
13 products. GNI Waterman points to limited differences in its and AM Valve's canal gates, such as color.
14 GNI Waterman's complaint notes that GNI Waterman and AM Valve's canal gates comprise the semi-
15 circular "hubcap" design. The (first) palming off cause of action alleges in essence that AM Valve sells
16 GNI Waterman's products in a slightly modified state and differently labeled. The (first) palming off
17 cause of action alleges the essence of no less than reverse palming off. Construed most favorably to GNI
18 Waterman, the (first) palming off cause of action survives AM Valve's challenge as to the absence of
19 allegations that AM Valve sells products under GNI Waterman's name.

20                    **Lanham Act Violation – Trade Dress Infringement**

21    GNI Waterman's (second) Lanham Act trade dress infringement cause of action alleges that AM
22 Valve has created copies of GNI Waterman's products to misappropriate GNI Waterman's trade dress
23 and to misrepresent the origin of AM Valve's design. AM Valve faults the cause of action's absence
24 of allegations that the subject trade dress in non-functional and has acquired secondary meaning.

25    Originally, trade dress "included only the packaging, or "dressing," of a product, but in recent
26 years has been expanded by many Courts of Appeals to encompass the design of a product." *Wal-Mart*
27 *Stores, Inc. v. Samara Bros., Inc.*, 529 U.S. 205, 209, 120 S.Ct. 1339, 1342 (2000). Trade dress involves
28 "the total image of a product and may include features such as size, shape, color or color combination,

texture, graphics, or even particular sales techniques." *Mattel, Inc. v. Walking Mountain Prods.*, 353 F.3d 792, 808 n. 13 (9th Cir.2003) (quoting *Two Pesos, Inc. v. Taco Cabana, Inc.*, 505 U.S. 763, 765 n. 1, 112 S.Ct. 2753, 120 L.Ed.2d 615 (1992)). A trade dress infringement plaintiff "must show that its trade dress is protectable and that defendant's use of the same or similar trade dress is likely to confuse consumers." *Fuddruckers, Inc. v. Doc's B.R. Others, Inc.*, 826 F.2d 837, 841 (9th Cir. 1987). Trade dress "may be protected if it is nonfunctional and has acquired secondary meaning and if its imitation creates a likelihood of consumer confusion." *Fuddruckers*, 826 F.2d at 842. To state a claim for trade dress infringement, plaintiff must allege: (1) that its claimed trade dress is inherently distinctive or has acquired secondary meaning; (2) that its claimed trade dress is nonfunctional; and (3) that defendant's product creates a likelihood of consumer confusion. *Clicks Billiards, Inc. v. Sixshooters, Inc.*, 251 F.3d 1252, 1258 (9th Cir.2001); *Nova Wines, Inc. v. Alder Fels Winery LLC*, 467 F.Supp.2d 965, 975 (N.D. Cal. 2006).

### **Non-Functionality**

AM Valve seeks to dismiss the (first) palming off and (second) trade dress infringement causes of action on grounds that GNI Waterman's complaint fails to allege "non-functionality." AM Valve argues that GNI Waterman "made absolutely no effort to allege non-functionality of the shape and design that is the subject of its alleged trade dress."

GNI Waterman responds that "non-functionality can be reasonably inferred" from its complaint's allegations. GNI Waterman argues that the semi-circular "hubcap" design of GNI Waterman and AM Valve's canal gates, as depicted in the complaint, "is arbitrary." GNI Waterman contends that there are "commercially feasible alternative configurations for water control gates which A/M Valve could utilize without 'passing off' Waterman's products." GNI Waterman claims that AM Valve could have used "a hexagonal or composite design distinct from the Waterman products described and depicted in the Complaint." According to GNI Waterman, its complaint alleges "indistinguishable" products and provides "explicit pictures" to evaluate its claim.

"A product feature is functional if it is essential to the product's use or if it affects the cost and quality of the product." *Rachel v. Banana Republic*, 831 F.2d 1503, 1506 (9th Cir. 1987). Functional features are the "actual benefit" that a consumer wishes to purchase, as distinguished from an assurance

that a particular entity made, sponsored or endorsed a product. *Rachel*, 831 F.2d at 1506. "The functionality doctrine prevents trademark law, which seeks to promote competition by protecting a firm's reputation, from instead inhibiting legitimate competition by allowing a producer to control a useful product feature." *Qualitex Co. v. Jacobson Prods. Co.*, 514 U.S. 159, 165, 115 S.Ct. 1300, 131 L.Ed.2d 248 (1995) "In determining functionality, a product's trade dress must be analyzed as a whole." *First Brands Corp. v. Fred Meyer, Inc.*, 809 F.2d 1378, 1381 (9th Cir. 1987). Inquiry "is not directed at the whether the individual elements are functional but whether the whole collection of elements taken together are functional." *International Jensen v. Metrosound U.S.A.*, 4 F.3d 819, 823 (9th Cir. 1993). Unique arrangements of "purely functional features" are a functional design not entitled to section 1125(a) protection. *Rachel*, 831 F.2d at 1506.

Functionality is a "question of fact." *Vision Sports, Inc. v. Melville Corp.,* 888 F.2d 609, 614 (9th Cir. 1989) (citing *Clamp Mfg. Co. v. Enco Mfg. Co.*, 870 F.2d 512, 514 (9th Cir.1989)); *Fuddruckers*, 826 F.2d at 842.) Factors to consider include whether: (1) a particular design yields a utilitarian advantage; (2) alternative designs are available to avoid hindering competition; and (3) the design achieves economies in manufacture or use. *International Jensen*, 4 F.3d at 823.

Although the complaint's photos of GNI Waterman and AM Valve's canal gates are helpful, the complaint lacks defined non-functionality allegations. The fact that functionality is a factual issue is persuasive to avoid F.R.Civ.P. 12(b)(6) dismissal of GNI Waterman's (first) palming off and (second) trade dress infringement causes of action. Nonetheless, AM Valve is entitled to a more definite statement of non-functionality to address factors of utilitarian advantage, availability of alternative designs and economies in manufacture or use. As AM Valve notes, GNI Waterman is not allowed to "punt" on non-functionality, and its amended complaint is expected to address absence of non-functionality allegations.

### **Secondary Meaning**

AM Valve seeks to dismiss the (first) palming off and (second) trade dress infringement causes of action on grounds that GNI Waterman's complaint fails to satisfy the essential element "that the subject product shape and design has acquired secondary meaning." AM Valve contends that GNI Waterman is required to plead secondary meaning that the subject trade dress was uniquely associated

1  with a single source because product shape and design is never "inherently distinctive." AM Valve
2  argues that references in GNI Waterman's complaint to the irrigation valve and water control industry
3  are insufficient "in the context of this case."

4  GNI Waterman responds that its complaint's references to recognition in the industry of its
5  products line's shape and design satisfy the secondary meaning requirements. GNI Waterman argues
6  that "when a product has acquired secondary meaning in the industry for which it is intended, the
7  product has acquired secondary meaning in the minds of potential purchasers." GNI Waterman
8  continues that when viewed most favorably to GNI Waterman, its allegations "that its products have
9  achieved secondary meaning in the water control industry are sufficient to state a trade dress claim."

10  A "mark has acquired distinctiveness, even if it is not inherently distinctive, if it has developed
11  secondary meaning." *Wal-Mart Stores, Inc. v. Samara Bros., Inc.*, 529 U.S. 205, 211, 120 S.Ct. 1339
12  (2000). "The trade dress of a product or service attains secondary meaning when the purchasing public
13  associates the dress with a particular source." *Fuddruckers*, 826 F.2d at 843. In the context before this
14  Court, "secondary meaning" refers to "the acquired, source-identifying meaning of a nonword mark."
15  *Wal-Mart Stores* 529 U.S. at 211, n., 120 S.Ct. at 1343, n.

16  Design "is not inherently distinctive" and "in an action for infringement of unregistered trade
17  dress under § 43(a) of the Lanham Act, a product's design is distinctive, and therefore protectable, only
18  upon a showing of secondary meaning." *Wal-Mart Stores*, 529 U.S. at 212, 216, 120 S.Ct. at 1339,
19  1344, 1346. Although § 1125(a) does not require "a producer to show that its trade dress is distinctive,
20  . . . courts have universally imposed that requirement, since without distinctiveness the trade dress would
21  not 'cause confusion . . . as to the origin, sponsorship, or approval of [the] goods."

22  GNI Waterman alleges that its product line's shape and design have "become recognized in the
23  industry as symbols uniquely associated with" GNI Waterman and that its "semi-circular 'hubcap
24  design', represents a distinctive appearance unique" to GNI Waterman in the industry. AM Valve argues
25  that "a claim of association in the 'industry'" is not an association in customers and potential customers'
26  minds and that association by customers and potential customers "is at the heart of secondary meaning
27  and patently missing" from GNI Waterman's complaint.

28  GNI Waterman's products at issue here are not purchased by the general public. Purchasers are

generally limited to canal operators and farmers. The universe of purchasers is too finite to support AM Valve's arguments. GNI Waterman's complaint sufficiently alleges that its products line's design and shape have achieved secondary meaning in that the potentially purchasing public associates the design and shape with a particular source, GNI Waterman. At this pleading stage, GNI Waterman has alleged sufficient distinctiveness to develop secondary meaning to survive AM Valve's F.R.Civ.P. 12(b)(6) and (e) motions.

### Likelihood Of Confusion

In addition to its (first) palming off and (second) trade dress infringement causes of action, GNI Waterman alleges a (third) trademark infringement cause of action that AM Valve, through its website and other channels, has used GNI Waterman's "federally-registered 'Waterman' trademark to promote its products and services" and that such use "is likely to cause public confusion, mistake or deception in violation of the Lanham Act." AM Valve argues that GNI Waterman's three Lanham Act causes of action fail in the absence of allegations as to the essential element of "likelihood of confusion by customers and potential customers as to the source of the product(s) in question."

Trademark infringement law "prevents only unauthorized uses of a trademark in connection with a commercial transaction in which the trademark is being used to confuse potential customers." *Bosley Medical Institute, Inc. v. Kremer*, 403 F.3d 672, 676 (9th Cir. 2005). The Second Circuit Court of Appeals has explained that the "Lanham Act seeks to prevent consumer confusion that enables a seller to pass off his goods as the goods of another . . . [T]rademark infringement protects only against mistaken **purchasing decisions** and not against confusion generally." *Lang v. Ret. Living Publishing Co., Inc.*, 949 F.2d 576, 582-583 (2nd Cir. 1991) (Bold added.)

AM Valve argues that a Lanham Act infringement claim (palming/passing off, trade dress or trademark infringement) requires GNI Waterman to plead that AM Valve's "use creates a likelihood of confusion with customers and potential customers as to the source of the products in question." AM Valve points out that GNI Waterman alleges that GNI Waterman and AM Valve's products bear their respective name brands and different colors (GNI Waterman (red) and AM Valve (green)). AM Valve continues that "the products in question are by their very nature not consumer goods sold to the general public" to negate "public confusion" tantamount to confusion among GNI Waterman's customers and

1  potential customers.

2  GNI Waterman responds that the "specific type of 'confusion'" suggested by AM Valve is "hair-
3  splitting" and unsupported by case law. GNI Waterman argues that it need not "plead the potential effect
4  of A/M Valve's conduct on specific individuals," only that "A/M Valve's acts have or are likely to cause
5  confusion."

6  GNI Waterman's complaint points to "public" or general confusion, not mistaken purchasing
7  decisions or similar confusion. Although the market for and potential consumers of GNI Waterman and
8  AM Valve's products are limited, the complaint lacks sufficiently definite allegations as to confused or
9  mistaken purchasing decisions. Although GNI Waterman, at this time, escapes F.R.Civ.P. 12(b)(6)
10 dismissal as to the likelihood of confusion issue, AM Valve is entitled to a more definite statement as
11 to confusion of GNI Waterman's potential consumers, especially given the limited market of GNI
12 Waterman's products.

### **Waterman Family Heritage**

14 GNI Waterman's complaint alleges that AM Valve uses the "Waterman heritage" to attract
15 customers to its irrigation control products and valves purportedly "compatible" with GNI Waterman's
16 products. GNI Waterman's (third) trademark infringement cause of action alleges that AM Valve has
17 used GNI Waterman's federally-registered "Waterman" trademark to promote its products and services
18 through AM Valve's website and other channels.

19 The Lanham Act "prohibits uses of trademarks, trade names, and trade dress that are likely to
20 cause confusion about the source of a product or service." *Bosely Medical Institute*, 403 F.3d at 677.
21 The Lanham Act's infringement section provides that any person who "use[s] in commerce any
22 reproduction, counterfeit, copy, or colorable imitation of a registered mark in connection with the sale,
23 offering for sale, distribution, or advertising of any goods or services on or in connection with which
24 such use is likely to cause confusion, or to cause mistake, or to deceive . . ." can be held liable for such
25 use. 15 U.S.C. § 1114(1)(a).

26 AM Valve argues that to prove trademark infringement, GNI Waterman must demonstrate that
27 AM Valve's use of GNI Waterman's registered trademark "is likely to cause confusion, mistake or to
28 deceive customers." AM Valve contends that use of a family name in business may constitute trademark

1  infringement in absence of precaution or explanation to prevent deception. AM Valve claims that its
2  website use of the Waterman family name is non-infringing in that it has explained that it "is a different
3  company and not a successor to the holder of the trademark" and that its website compares its products
4  to competitors, including GNI Waterman. AM Valve faults the (third) trademark infringement cause
5  of action's absence of allegations that AM Valve's use of its owners' family heritage is confusing or that
6  AM Valve failed to explain it is a different company than GNI Waterman.

7  GNI Waterman responds that use of the Waterman surname is an invalid defense in that it is not
8  the surname of any AM Valve principal. GNI Waterman argues that even if the defense applied, it
9  requires reasonable precautions to distinguish use of the surname from the trademark.

10  "[A]lthough the use of one's surname is not a 'defense' to a trademark infringement action, courts
11  generally allow the use of one's own name if reasonable precautions are taken." *Sardi's Restaurant*
12  *Corp. v. Sardie*, 755 F.2d 719, 725 (9th Cir. 1985); *see Herring-Hall-Marvin Safe Co. v. Hall's Safe Co.*,
13  208 U.S. 554, 559, 28 S.Ct. 350 (1908) ("rights of the two parties have been reconciled by allowing the
14  use [of surname], provided that an explanation is attached.) If a "second comer owns the company
15  himself and evinces a genuine interest in establishing an enterprise in which his own skill or knowledge
16  can be made known to the public, that argues in favor of allowing him to use his own name in some
17  restricted fashion." *Taylor Wine Co. v. Bully Hill Vineyards, Inc.*, 569 F.2d 731, 735 (2nd Cir. 1978).
18  As stated in *Societe Vinicole de Champagne v. Mumm*, 143 F.2d 240, 241 (2d Cir. 1944), to prohibit an
19  individual from using his true family surname is to "take away his identity: without it he cannot make
20  known who he is to those who may wish to deal with him; and that is so grievous an injury that courts
21  will avoid imposing it, if they possibly can." "When confusion is likely, however, there must obviously
22  be some limitation on an individual's unrestricted use of his own name. Thus, a second comer may not
23  use any name, mark or advertisement indicating that he is the successor of another corporation or that
24  his goods are the products of that corporation." *Taylor Wine*, 569 F.2d at 735.

25  Based on cryptic allegations of GNI Waterman's complaint, alleged consumer confusion from
26  use of the Waterman trademark is unclear. Although GNI Waterman is correct that at this pleading
27  stage, it need not address AM Valve's reasonable precautions, GNI Waterman must provide a more
28  definite statement as to confusion of GNI Waterman's potential consumers from AM Valve's alleged

use of the Waterman trademark through AM Valve's website and other channels, which the complaint fails to identify or to define adequately.

### State Law Unfair Competition

GNI Waterman alleges a (fourth) unfair business practices cause of action under the unfair competition law of California Business & Professions Code sections 17200, et seq. ("Unfair Competition Law"). The cause of action alleges that AM Valve violated the Unfair Competition Law in that AM Valve palmed off GNI Waterman's goods and infringed upon of GNI Waterman's trade dress and trademark to constitute a false designation of origin, a false or misleading description of fact, and/or a false or misleading representation of fact likely to cause confusion.

AM Valve argues that its conduct is permissible under federal law to preempt GNI Waterman's (fourth) Unfair Competition Law cause of action, which targets the same conduct as GNI Waterman's unsupported Lanham Act causes of action and relies on the same facts to support the Lanham Act causes of action. AM Valve contends that the (fourth) unfair business practices cause of action should be dismissed because "federal patent and copyright policy forbid states from imposing unfair competition liability for copying product shapes which federal law leaves in the public domain."

AM Valve appears to rely on the following from *Sears, Roebuck & Co. v. Stiffel Co.*, 376 U.S. 225, 231, 84 S.Ct. 784 (1964): "Just as a State cannot encroach upon the federal patent laws directly, it cannot, under some other law, such as that forbidding unfair competition, give protection of a kind that clashes with the objectives of the federal patent laws." AM Valve further appears to rely on the following from *Campco Corp. v. Day-Brite Lighting, Inc.*, 376 U.S. 234, 237, 84 S.Ct. 779 (1964): "Today we have held in *Sears, Roebuck & Co. v. Stiffel Co.*, 376 U.S. 225, 84 S.Ct. 784, that when an article is unprotected by a patent or a copyright, state law may not forbid others to copy that article. To forbid copying would interfere with the federal policy, found in Art. I, § 8, cl. 8, of the Constitution and in the implementing federal statutes, of allowing free access to copy whatever the federal patent and copyright laws leave in the public domain."

AM Valve fails to establish how the (fourth) Unfair Competition Law cause of action is preempted or clashes with federal law at issue here. As noted by GNI Waterman, the Unfair Competition Law provides a "separate and independent means" to prohibit illegal conduct. "In contrast

to its limited remedies, the unfair competition law's scope is broad." *Cel-Tech Communications, Inc. v. Los Angeles Cellular Telephone Co.*, 20 Cal.4th 163, 180, 83 Cal.Rptr.2d 548 (1999). The Unfair Competition Law does not proscribe specific practices but, rather, defines "unfair competition" to include "any unlawful, unfair or fraudulent business act or practice." *Cal-Tech Communications*, 20 Cal.4th at 180, 83 Cal.Rptr. 548 (quoting Cal. Business & Prof. Code § 17200.) The Unfair Competition Law's coverage is "sweeping" and embraces "anything that can properly be called a business practice and that at the same time is forbidden by law." *Rubin v. Green,* 4 Cal.4th 1187, 1200, 17 Cal.Rptr.2d 828 (1993). It governs "anti-competitive business practices" and has as a major purpose "the preservation of fair business competition." *Barquis v. Merchants Collection Assn.*, 7 Cal.3d 94, 110, 101 Cal.Rptr. 745 (1972). By proscribing "any unlawful" business practice, "section 17200 'borrows' violations of other laws and treats them as unlawful practices" that the Unfair Competition Law makes independently actionable. *State Farm Fire & Casualty Co. v. Superior Court* 45 Cal.App.4th 1093, 1103, 53 Cal.Rptr.2d 229 (1996) (citing *Farmers Ins. Exchange v. Superior Court*, 2 Cal.4th 377, 383, 6 Cal.Rptr.2d 487 (1992)). GNI Waterman further notes that although its Unfair Competition Law remedies may be limited to injunctive relief and restitution, such remedies are in addition to, not dependent on, its other sought after remedies. As such, since GNI Waterman's Lanham causes of action survive, subject to granting in part AM Valve's motion for more definite statement, GNI Waterman's (fourth) Unlawful Competition Law cause of action survives.

## Conversion And Trespass To Chattel

GNI Waterman alleges (fifth) conversion and (sixth) trespass to chattel causes of action that AM Valve wrongfully interfered with GNI Waterman's "valid ownership rights" by misappropriating GNI Waterman's forms, designs and patterns without GNI Waterman's consent. AM Valve faults the causes of action's absence of allegations that AM Valve "actually interfered with specific personal property" of GNI Waterman.

"[C]onversion is a tort that may be committed only with relation to personal property" and applies to personal property. *Munger v. Moore*, 11 Cal.App.3d 1, 7, 89 Cal.Rptr. 323 (1970). "Conversion is the wrongful exercise of dominion over the personal property of another." *Taylor v. Forte Hotels International*, 235 Cal.App.3d 1119, 1124 (1991) (citing *Zaslow v. Kroenert,* 29 Cal.2d

541, 549, 176 P.2d 1 (1946)). Trespass to chattels "lies where an intentional interference with the possession of personal property has proximately caused injury." *Thrifty-Tel, Inc. v. Bezenek*, 46 Cal.App.4th 1559, 1566-15667 (1996); *see, e.g., Itano v. Colonial Yacht Anchorage,* 267 Cal.App.2d 84, 90, 72 Cal.Rptr. 823 (1968).

As noted by AM Valve, the conversion and trespass to chattels causes of action allege that GNI Waterman "held a valid ownership right to the proprietary forms, designs and patterns used to manufacture" GNI Waterman's products. AM Valve faults the causes of action's absence of allegations that AM Valve interfered with GNI Waterman's "personal property." AM Valve contends that GNI Waterman's alleged "ownership right to the proprietary forms, designs and patterns" is not "tangible, personal property" to warrant dismissal of the conversion and trespass to chattels causes of action.

GNI Waterman responds that the patterns and forms to manufacture the products at issue are the "physical property" subject to its claims in that they are items which GNI Waterman paid for and owns and with which AM Valve interfered. GNI Waterman argues that because AM Valve interfered with GNI Waterman's physical property, GNI Waterman's conversion and trespass to chattels claims survive.

In its reply papers, AM Valve contends that GNI Waterman has changed from a "misappropriation or interference with ownership rights to interference with its personal property" to require it to amend its conversion and trespass to chattels causes of action.

AM Valve is correct. GNI Waterman's complaint fails to allege wrongful exercise of dominion over another's "personal property" or intentional interference with the possession of "personal property." In its opposition papers, GNI Waterman switches from intangible ownership rights of forms, designs and patterns to the forms, designs and patterns themselves. Since GNI Waterman's current complaint focuses on conversion and interference with intangible ownership rights, the (fifth) conversion and (sixth) trespass to chattel causes of action are dismissed with leave to amend.

**Greater Pleading Specificity**

AM Valve faults GNI Waterman for identifying only AM Valve's AMC-10 model and claims it is uncertain which other products, if any, are allegedly infringing. More specifically, AM Valve faults GNI Waterman for:

1.   Failure to identify in the (first) palming off cause of action "products that are

1       'interchangeable' with Waterman products";

2   2.   Reference to "creating copies of Waterman's products" in the (second) trade dress
3       infringement cause of action;

4   3.   Consistent vague references to GNI Waterman and AM Valve's products;

5   4.   Failure to identify and define "other channels" as sources of infringing use of GNI
6       Waterman's trademark.

7 AM Valve argues that it cannot ascertain the "other channels" in that its products display the AM Valve
8 brand.

9       GNI Waterman generally responds that through discovery, AM Valve will be able to obtain the
10 specific information it seeks.

11       AM Valve raises valid points as to GNI Waterman's failure to identify or define: (1) AM Valve's
12 specific infringing products; (2) AM Valve's products interchangeable with GNI Waterman's products;
13 and (3) "other channels" as sources of infringing use of GNI Waterman's trademark. GNI Waterman's
14 amended complaint is expected to identify or define precisely AM Valve's products and other channels
15 which GNI Waterman alleges are infringing.

16       The reference to creating copies of GNI Waterman's products in the (second) trade dress
17 infringement cause of action appears to address use of GNI Waterman's forms, patterns and designs to
18 create irrigation control products and valves. Through discovery and GNI Waterman's F.R.Civ.P. 26(a)
19 initial disclosures, AM Valve should be in a position to obtain specificity, the lack of which it complains
20 here.

21                            **CONCLUSION AND ORDER**

22       For the reasons discussed above and pursuant to its directives herein, this Court:

23   1.   DENIES AM Valve's F.R.Civ.P. 12(b)(6) motion to dismiss GNI Waterman's (first)
24       palming off, (second) trade dress infringement, (third) trademark infringement, and
25       (fourth) Unfair Competition Law causes of action;

26   2.   GRANTS AM Valve's F.R.Civ.P. 12(e) motion for a more definite statement insofar as
27       to ORDER GNI Waterman, no later than September 21, 2007, to file an amended
28       complaint to allege specific facts and greater particularity as to:

    A.  Non-functionality of GNI Waterman's products' shapes and designs;

    B.  Likelihood of consumer confusion and mistaken purchasing decisions created by AM Valve's products and AM Valve's use of the Waterman trademark through AM Valve's website and other channels (including identifying or defining the other channels); and

    C.  AM Valve's specific infringing products and products interchangeable with GNI Waterman's products (including identifying or defining such products); and

  3.  DISMISSES with leave to amend GNI Waterman's (fifth) conversion and (sixth) trespass to chattels causes of action.

IT IS SO ORDERED.

**Dated: September 7, 2007**      /s/ Lawrence J. O'Neill
                    UNITED STATES DISTRICT JUDGE